# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 175 | **DATE** | 5/6/2004 |
| **CASE TITLE** | USA vs. Singleton | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Defendant filed various documents challenging the Court's jurisdiction over him in this case. All of the Defendants' motions were denied on the record in open court and his legal arguments were rejected. Since his legal position about jurisdiction led him to waive his right to counsel and to be present during trial, the Court sets forth the reasons for rejecting his argument in the attached opinion. The attached opinion also sets forth the reasons the Court accepted the Defendant's waiver of his right to be present.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| ☐ No notices required, advised in open court. | | | | |
| ☐ No notices required. | | number of notices | | |
| ☐ Notices mailed by judge's staff. | | MAY 0 7 2004 | | 82 |
| ☐ Notified counsel by telephone. | | date docketed | | |
| ✓ Docketing to mail notices. | | | | |
| ☐ Mail AO 450 form. | | docketing deputy initials | | |
| ☐ Copy to judge/magistrate judge. | | date mailed notice | | |
| jar(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | No. 03 CR 175 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| ANTHONY SINGLETON | ) | DOCKETED |
| | ) | |
| Defendant. | ) | MAY 7 - 2004 |

## MEMORANDUM OPINION

In December 2003, the Defendant in this case began to submit a string of somewhat bizarre pro se filings. In these filings, he took an unusual and obscure position that he was not the Defendant in this matter and that the Court lacked jurisdiction over him. This Court repeatedly rejected Defendant's contentions on the record in open court. Since the Defendant's contentions led him to waive his right to counsel and his right to participate in his criminal trial, the Court sets forth below the nature of his position and the reasons for its rejection.

### I. DISCUSSION

### A. Phase One: February 20, 2003 through mid-December 2003

On February 20, 2003, a grand jury returned a three-count indictment charging Anthony Singleton with mail fraud (Count I) and illegal possession of postal arrow keys (Counts II & III). Because one of the Defendant's theories depends in part on the way the Defendant's name is presented in legal papers, the Court notes that the indictment consistently refers to the Defendant as "ANTHONY SINGLETON, also known as 'Anthony Hall'".

On March 10, 2003, the Defendant filed a pro se motion to dismiss the indictment for failure to indict in a timely manner. Between March 10 and June 25, the Defendant in this case fired two attorneys that had been appointed to represent him. He fired each attorney within twenty-one days of his appointment. He additionally submitted several pro se motions in connection with the motion to dismiss the indictment. In those motions, he refers to himself as interchangably as "Anthony Singleton", "ANTHONY SINGLETON" and "Mr. Singleton." After receiving briefs from both sides and holding an evidentiary hearing, the Motion was denied on June 25, 2003.

On June 27, 2003, the Court ordered the appointment of a third attorney for the Defendant in this case. On July 7, Paul Brayman filed his appearance on behalf of the Defendant. Between July 7 and mid-December 2003, there was no significant activity in this case while Mr. Brayman conducted plea negotiations with the government.

**B.    Defedant's Bizarre Pro Se Filings**

On December 15, 2003, the Defendant sent a letter to Mr. Brayman asserting that "Anthony Singleton [is] a flesh and blood man under the original agreement of the United States Constitution for America"; the court lacks jurisdiction; and Mr. Brayman's "services concerning [ANTHONY SINGLETON] in public affairs will no longer be required since I am not associated with the debts, damages or penalties associated with [ANTHONY SINGLETON] in the aforementioned corporate matter." The Defendant forwarded a copy of the letter to the clerk of this court and requested that this letter become part of the case file in 03 CR 175.

Between December 15, 2003 and January 9, 2004, the Defendant submitted five bizarre

2

pro se filings.[1]  Although it was not at all clear to this Court what the Defendant was claiming in

these filings, the most lengthy exposition of Defendant's position can be found in a document

styled "CONSTRUCTIVE AND ACTUAL MANDATORY JUDICIAL NOTICE–LIABILITY

OF THE COURT AFFIDAVIT" that was received in this Court on January 2, 2004.  In this

document, he asserts, inter alia, that:

> (1) this Court lacks jurisdiction and can be held liable in tort for acting without
> jurisdiction;
> (2)"Anthony Singleton El (correctly spelled, upper and lower case letters), the
> undisclosed principal, pursuant to UCC 1.201 and HJR 192 of June 5, 1933, is
> exempt from Levy, Non-Military, Non-Assumpsit, and Non-
> Corporate/Commercial Activities";
> (3) he is a Kushite governed by natural law, the great law of peace, the organic
> 1791 Constitution, and the Kushite (African) principles of existence; and
> (4) the "UNITED STATES OF AMERICA, INCORPORATED (also known as
> the 1863 United States Rights Republic USA) is a foreign, fictitious, Military, and
> Corporate/Commercial entity to the lands of the Americas, operating, existing,
> and controlled under the CATHOLIC MAGNA CARTA, the KNIGHTS OF
> COLUMBUS CODE, THE KU KLUX KLAN OATH, and the unlawful
> amendments of the original 1791 Constitution."

(Liability of Court Aff. at 2–4.)  Based on these filings and the Defendant's in-court demeanor,

on January 9, 2004, the Court on its own motion ordered that the Defendant submit to a

competency evaluation.

The evaluation report outlines essentially two bizarre theories that the Defendant

apparently accepts and relies upon in his submissions to this Court.  The first is a theory that the

U.S. government created individual treasury accounts for each U.S. citizen in the 1930s that are

referenced whenever the citizen is referred to in all capital letters (e.g. ANTHONY

---

[1]Also during this time period, he apparently changed his name from Anthony Singleton to
Anthony Singleton-El.  The -El suffix first appeared in a "Notice of Felony/Notice of Protest"
that he mailed on December 21, 2003 and was received on December 29, 2003.

SINGLETON). The Defendant asserts that because the indictment and other court filings refer to him in all capital letters, they are referring to the treasury account and not the actual person of Anthony Singleton, now known as Anthony Singleton-El. The second theory holds that the U.S. Congress illegally adjourned without a quorum in March 1861, so all laws that have been enacted since that time are nullities. Since the laws that the defendant is accused of violating were promulgated since 1861, the Defendant believes that they do not apply.

The appearance of these theories in this case coincided with the arrival of another federal detainee from Pennsylvania at the Metropolitan Correctional Center (MCC). While at the MCC, this detainee was housed in the same unit as the Defendant between December 4, 2003 and January 16, 2004. Between December 30, 2003 and January 16, 2004, the two shared the same cell. Their cohabitation is significant because the legal arguments the defendant made in this case are identical in all pertinent respects to arguments that the Pennsylvania detainee was presenting to the court.

The forensic evaluator concluded that there was no reason to believe that the Defendant was incompetent to stand trial or that he suffered from an ascertainable mental health disorder that would support a finding of insanity. Although the Defendant's legal strategy was unlikely to succeed, the evaluator found that it was not the product of delusional thinking or some other ascertainable mental health disorder.

After concluding that the Defendant was sane and competent to stand trial, the Court proceeded to bring the case to trial. In every subsequent proceeding, the Defendant would appear and insist that he was not the defendant in this matter, he was merely a secured party and a priority lien holder over the true defendant, the supposed corporate entity of ANTHONY

4

SINGLETON. Each time, the Court rejected the Defendant's position.

The Court rejected the Defendant's legal argument for several reasons. First, the Court clearly has jurisdiction over this criminal case. This Court's jurisdiction derives from the indictment delivered by the properly assembled grand jury that accuses the defendant of violating 18 U.S.C. § 1704 and 18 U.S.C. § 1708. The Defendant had clearly accepted the jurisdiction of this Court prior to December 2003. It is almost a certainty that the change of his legal strategy resulted from the unfortunate influence of his fellow detainee who shared the same bizarre beliefs. While jurisdiction is a non-waivable defect, this Court's jurisdiction does not depend on the unusual and varying beliefs of the Defendant. Second, the Defendant presented no relevant evidence or argument in support of his highly dubious propositions. It is not clear to this Court that Congress did adjourn without a quorum in 1861 or that the Treasury Department ever created accounts for U.S. citizens that are referenced when the citizen is referred to in all capital letters. Additionally, if Congress had adjourned without a quorum, it is not clear that the necessary remedy would be to nullify all subsequent federal enactments. Third, it makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. The federal courts abandoned this level of formalism long ago. Whether the indictment referred to "Anthony Singleton" or "ANTHONY SINGLETON", the Court finds that it clearly alleged that the flesh and blood person of the Defendant in this case violated provisions of federal criminal law.

## C.    Defendant's participation during trial

Defendant's adherence to his legal position led him to seek to absent himself from his trial. When he appeared in Court on his trial date, he refused to recognize the jurisdiction of the

court over him and requested to be excused from participating in the proceedings.

Rule 43 of the Federal Rules of Criminal Procedure sets forth the requirements relating to the defendant's presence. Rule 43(a) establishes that the defendant must be present at the initial appearance, the initial arraignment, the plea, every trial stage (including jury impanelment and the return of the verdict), and sentencing. Fed. R. Crim. Pro. 43(a). Rule 43(c) establishes that a defendant who is initially present at trial can waive the right to be present under certain enumerated circumstances. The circumstance that applies specifically in this case is that of Rule 43(c)(1)(A), which provides that: "A defendant who was initially present at trial waives the right to be present . . . when the defendant is voluntarily absent after the trial has begun . . . ." Fed. R. Crim. Pro. 43(c)(1)(A); see also Taylor v. United States, 414 U.S. 17 (1973) (per curiam) (holding that trial of a Defendant who voluntarily absents herself during trial is permitted); cf. Crosby v. United States, 506 U.S. 225 (1993) (holding that the Defendant must be present for the beginning of trial under Rule 43 of the Federal Rules of Criminal Procedure).

The Defendant in this case affirmatively sought to absent himself from these proceedings, even offering to sign a waiver of his rights to be present. The Court strongly advised the Defendant against absenting himself from the proceedings. During jury selection, the Defendant threatened to become very disruptive if he were required to remain in the courtroom. After the jury was impaneled, the Defendant renewed his request to be absent from the proceedings.

After advising the Defendant of the rights he would waive if he were absent from these proceedings, the Court granted the Defendant's request. If the Court were to require the Defendant's presence in circumstances such as this, few, if any, positive consequences would result. The Defendant indicated (in writing) an intention to become very disruptive if he were

6

forced to remain in the courtroom. A citation for contempt of court would not serve the Defendant's interests, nor would his disruptive behavior be in the interests of justice as it could unfairly prejudice the jury against him. The United States Marshals Service, an organization charged with the task of transporting criminal defendants to and from court, expressed concern about the challenges that would confront them if the Defendant refused to be transported to court voluntarily.[2] This raises a risk that requiring the Defendant's presence might endanger his personal safety as well as the personal safety of members of the United States Marshals Service. In light of the Defendant's rejected legal position, his consistent assertion that he is a "secured party and priority lien holder" and not the defendant would undoubtedly introduce irrelevant and confusing issues to the jury.

In this unique situation where the Defendant clearly and knowingly waived his right to counsel and his right to be present in the proceeding, this Court did not compel him to be present during the remainder of his trial.

---

[2]Standing alone, the challenges in transporting an unwilling Defendant would *never* be sufficient grounds to keep the Defendant out of court, but where the Defendant has clearly and unequivocally expressed a desire *not* to be present, concerns for the safety of the Defendant and the U.S. Marshals during transportation are relevant to whether the Court should authorize the use of physical force to compel the Defendant's presence.

## CONCLUSION

The Court rejected the Defendant's arguments relating to the Court's jurisdiction and permitted him to waive his right to be present for the reasons set forth above.

**Enter:**

David H. Coar
**United States District Judge**

**Dated: May 6, 2004**